

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

~~ATTORNEY GENERAL~~

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4026
Re: Taxability under Article 15,
House Bill 8, Regular Session,
Forty-seventh Legislature, of
the transfer of the right to
subscribe to original issue stock
or the issue of such stock, where
all of the stock of the corpora-
tion is subscribed in the name of
one promoter.

Your letter of September 22, 1941, submits for our opin-
ion the following question:

"I would appreciate your official opinion on
the following question which has been raised by the
National Association of Securities Dealers, Inc.,
District Committee No. 6, pertaining to Article 15,
of House Bill 8, this being the Stock Transfer Tax
Law:

"Where the promoter of a corporation subscribes
to all stock in his own name, but sells a portion of
it to the general public prior to issuance, and the
original stock is, accordingly, issued to the persons
who bought it from the promoter, is a tax payable
either on the sale of the unissued stock or on the
original issue?"

In our Opinion No. O-3594 we have held that the stock
transfer tax levied by Article 15, House Bill 8, Acts, Regular
Session Forty-seventh Legislature, does not apply to an original
issue of stock, that is, the issuance by a corporation of shares
of stock to the persons who subscribed therefor. Also see People
vs. Duffy McInnerny Company, 106 N.Y.S. 878; affirmed, Ct. of App.,
86 N.E. 1129.

But it does not follow from this ruling that the trans-
fer of a certificate of subscription or certificate for rights to
stock of original issue is similarly beyond the scope and purview

of the stock transfer tax levied by said Act.  The issuance of stock by the corporation, either out of original or increased capitalization, to a subscriber of and for such stock, pursuant to a subscription contract or agreement, is not, under the above cited opinion and decision, considered to be a taxable transfer. But the transfer of the original subscriber or subscribers, whether one or many, of his or their right to receive such original issue stock, to another person, firm or corporation is manifestly within the incidence of the following pertinent provisions of Section 1 of the cited Act:

"Section 1.  There is hereby imposed and levied a tax as hereinafter provided on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or certificates for rights to stock, or certificates of deposit representing an interest in or representing certificates made taxable under this Section in any domestic or foreign association, company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date hereof, whether made upon or shown by the books of the association, company, corporation, or trustee, or by any assignment in blank or by any delivery of any paper or agreement or memorandum or other evidence of sale of transfer or order for or agreement to buy, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to such stock or other certificate taxable hereunder, or with the possession or use thereof for any purpose, or to secure the future payment of money or the future transfer of any such stock, or certificate, on each hundred dollars of face value or fraction thereof, three (3) cents, * * *."  (Underlining ours)

This conclusion finds strong support in persuasive authority from the highly regarded jurisdiction of New York, namely the case of Sohmer vs. Hebden et al (Ct. of App. of N.Y.) 111 N.E. 1100, reversing, through memorandum opinion, the decision of the intermediate appellate court of New York, reported at 151 N.Y.S. 346.  The court of last resort of New York in this case held that transfers of certificate of subscription to an issue of additional capital stock of the Canadian Pacific Railway Company were taxable under an identical provision of the stock transfer tax law of New York, as more fully appears in the dissenting opinion of the lower court, upon which the decision of reversal was based. We quote from said opinion:

"WOODWARD, J.  I dissent.  Accepting the statement of facts as made by Mr. Justice Kellogg, it

seems to me that the defendants are brought square-
ly within the letter and spirit of the statute.
Section 270 of the Tax Law provides that:

"'There "is hereby imposed and there shall im-
mediately accrue and be collected a tax, as herein
provided, on all sales, or agreements to sell, or
memoranda of sales of stock, and upon any and all
deliveries or transfers of shares or certificates of
stock in any domestic or foreign association, com-
pany or corporation, made after the first day of
June, nineteen hundred and five, whether made upon
or shown by the books of the association, company or
corporation, or by any assignment in blank, or by any
delivery, or by any paper or agreement or memorandum
or other evidence of sale or transfer, whether inter-
mediate or final, and whether investing the holder
with the beneficial interest in or legal title to
said stock or merely with the possession or use there-
of for any purpose, or to secure the future payment
of money, or the future transfer of any stock, on each
hundred dollars of face value of fraction thereof,
two cents," etc.'

"It is difficult to understand how language
could be more comprehensive for the purpose of reach-
ing transfers of stock. This is a revenue measure,
designed to give the state an income from the privi-
lege of transferring stock of corporations within
this State. The Canadian Pacific Railway Company, in
increasing its capital stock by $60,000,000 was ob-
liged to give its stockholders the privilege of pur-
chasing this stock, and this was done by permitting
each stockholder to purchase his portion of the stock
at $175 per share, the payments being deferred.
There were some limitations on the holders of these
new shares. They were not to have all of the pri-
vileges of stockholders until the final payments,
but in the meantime they were given intermediate
certificates, which entitled them to receive 7 per
cent, interest upon the portion paid in, together
with the right of making the final payments and re-
ceiving the final certificates. These intermediate
certificates were stock certificates; they were
transferable, and gave to the holder the rights of
a stockholder upon the performance of the conditions.
The fact that they did not immediately invest the
holder with all of the privileges of the old certi-
ficates is of no importance; each of these certifi-
cates was a 'paper or agreement or memorandum or

other evidence of sale or transfer;' intermediate
to the final certificates, and it was designed to
secure the 'future transfer of any stock' which
might have been secured to the holder thereof.

"These intermediate certificates are not uncom-
mon; they are very generally used in reorganizations
and consolidations, pending the final arrangements,
and it was clearly the purpose of the statute to pro-
vide for these the same as though they were final
certificates.  These intermediate certificates, while
temporarily denying some of the privileges of stock-
holders, must ripen into full privileges upon the
performance of the conditions, and if these were per-
mitted to be transferred without the payment of the
tax, a wide field for fraud upon the revenues would
be opened up.  The general investor pays little at-
tention to his  privileges as a stockholder; he is
interested in the income, and he would be entitled
to this upon his intermediate certificate as complete-
ly as though he had the formal and final certificates,
and it ought not to be held that the transfer of
these valuable rights can be made free of taxation,
while certificates of stock, of less prosperous corp-
orations, are taxed for the same privilege."

A comparison of the section of the stock transfer tax
law upon which the above case turned with the similar provision
or section of the Act under consideration here, demonstrates the
aptness of said decision, though persuasive only, to the instant
situation.  It has been stated that a "phrase, provision or stat-
uate adopted from the laws of another state or county will
ordinarily be given the same construction in Texas that it had
received in the jurisdiction from which it was borrowed.  If it
had been given a fixed and definite meaning by the courts of
that jurisdiction, it would be given the same meaning in Texas.
This rule rests upon the presumption that the Legislature was
aware of the judicial interpretation given in the jurisdiction
from which the statute was taken, and that in adopting such stat-
ute it intended also to accept such construction." 39 Tex. Jur.
264-265.  It is a matter of general acceptation that the stock
transfer tax measure involved here was patterned largely after
the stock transfer tax law of the state of New York, involved in
the foregoing decision.

Other cases interpreting similar provisions of the
Federal Stock Transfer Tax Law (26 Internal Revenue Code 1802)
and holding the transfer of a right to receive stock to be tax-
able, are Founders General Corp. v. Hoey, 300 U.S. 268, 57 S. Ct.
457, 81 L. Ed. 639; Ladner v. Pennroad Corporation 97 F. (2d)

10, Cert. den. 59 S. Ct. 78, 305 U.S. 618, 83 L. Ed. 394; Corporation of America v. McLaughlin 100 F. (2d) 72.

Under the foregoing considerations, we accordingly hold that the stock transfer tax levied by the above-cited section of the stock transfer tax law accrues against the promoter in the instant factual situation upon the sale or transfer to the public generally of his right, however evidenced, to receive, when issued, all or any part of the original capital stock of the corporation. The fact that all of the original issue stock of the corporation was subscribed by one promoter rather than by several promoters or subscribers, does not militate against this conclusion because the tax in question is levied upon the transfer of the right to such original stock, when issued, and has no concern with the relations of the original subscribers to the corporation or to the number of such subscribers.

Of course, the issuance by the corporation of stock to the person, firm or corporation who purchased the subscription rights from the original promoter or subscriber would not be a taxable transfer under the Act, because same would represent an original issue of stock which, it has been pointed out above, is not taxable.

Trusting the foregoing fully answers your inquires, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By: s/ Pat M. Neff, Jr.
Pat M. Neff, Jr.
Assistant

PMN:ej:wc


APPROVED NOV 7, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman